# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------X
KAREN MCDOUGAL,

            Plaintiff,

  -against-

FOX NEWS NETWORK, LLC,

            Defendant.
---------------------------------X

Index No.
**SUMMONS**
Date Purchased:
Plaintiff designates New York
County as the place of trial.

Venue is based upon the
Defendant's principal place
of business and headquarters

To the above named defendant:

    **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and to serve a copy of your answer on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the verified complaint.

Dated:    New York, New York
           December 4, 2019        ERIC R. BERNSTEIN, P.C.
                                           By: _/s/ Eric Bernstein_
                                           260 Madison Avenue, 18th floor
                                           New York, NY 10016
                                           (212)683-1530

                                           _Attorneys for Plaintiff_

Defendant's address:

Fox News Network, LLC
1211 Avenue of the Americas
New York, NY 10036

c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------X
KAREN MCDOUGAL,

               Plaintiff,

     -against-

FOX NEWS NETWORK, LLC,

               Defendant.
------------------------------------X

Index No. _____

**VERIFIED COMPLAINT**

Plaintiff KAREN MCDOUGAL ("MCDOUGAL"), by and through her attorneys ERIC R. BERNSTEIN, P.C., as and for her Verified Complaint against FOX NEWS NETWORK, LLC ("FOX NEWS"), alleges as follows:

**PARTIES**

1. MCDOUGAL is a resident and domiciled in the State of Arizona.

2. FOX NEWS is a foreign limited liability company with its principal place of business and headquarters located at 1211 Avenue of the Americas, New York, New York.

**JURISDICTION**

3. This Court has jurisdiction over FOX NEWS pursuant to CPLR §301 and §302.

**VENUE**

4. Venue properly lies in New York County based upon

1

FOX NEWS' principal place of business and headquarters.

**FACTS COMMON TO ALL CAUSES OF ACTION**

5. According to its website, FOX NEWS operates the FOX News Channel ("FNC"), FNC is a top five-cable network, FNC has been the most watched news channel in the country for more than 16 years, and according to a 2018 Research Intelligencer study by Brand Keys, FOX NEWS ranks as the second most trusted television brand in the country. Additionally, according to its website, a Suffolk University/USA Today survey states that FOX NEWS is the most trusted source for television news or commentary in the country, while a 2017 Gallup/Knight Foundation survey found that among Americans who could name an objective news source, FOX NEWS is the top-cited outlet. FNC is available in 90 million homes and dominates the cable news landscape while routinely notching the top ten programs in the genre, according to the FOX NEWS website.

6. One of the television shows produced and aired by FOX NEWS in New York is called "Tucker Carlson Tonight" which has an average daily viewing audience of approximately 2,800,000.

7. "Tucker Carlson Tonight" is hosted by Tucker Carlson

("Carlson") who is employed by FOX NEWS. FOX NEWS also produces Tucker Carlson Tonight in Manhattan among other places and airs it weekdays at 8:00pm (Eastern Standard Time).

8. According to the show's website, Carlson advertises himself as a reporter of the news and refers to his show as the "sworn enemy of the lying."

9. On or about December 10, 2018, FOX NEWS aired, produced, and published "Tucker Carlson Tonight" (the "Show") over its cable television network and later on line via its website.

10. During the Show, Carslon was purporting to report on undisputed facts. In particular, he was reporting on payments that Donald Trump ("Trump") caused to be made to McDougal and another woman.

11. In reporting these "undisputed facts" on the Show, Carlson stated that MCDOUGAL extorted Trump and that was why Trump caused the payment of $150,000 to be made to MCDOUGAL.

12. Carlson, during the Show, stated, in relevant part:

Remember the facts of the story, these are undisputed. Two women [one of which was McDougal] approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give them money.

Now that sounds like a classic case of extortion. Yet for whatever reason, Trump caves to it, and he directs Michael Cohen to pay the ransom. Now, more than two years later,

3

> Trump is a felon for doing this. It doesn't seem to make any sense.
>
> Oh, but you're not a federal prosecutor on a political mission. If you were a federal prosecutor on a political mission, you would construe those extortion payments as campaign contributions.

13. Carlson's statements were intentionally false and made with reckless disregard for the truth.

14. Although all of Carlson's statements regarding MCDOUGAL are untrue, he begins his news report by informing his 2.8 million viewers that his statements are "facts" and are "undisputed".

15. Carlson then stated that MCDOUGAL "approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give them money." Although Carlson never mentions MCDOUGAL by name, it was obvious to a reasonable viewer who he was referring to particularly when Carlson put a picture of MCDOUGAL on the screen while reporting that she extorted Trump.

16. This statement is completely untrue and was made knowing it was untrue and with reckless disregard for the truth.

17. MCDOUGAL never approached Trump and threatened to ruin his career or humiliate his family if he did not give her money.

18. Carlson further states that MCDOUGAL's purported

4

Case 1:19-cv-11161 Document 1-1 Filed 12/05/19 Page 8 of 18
FILED: NEW YORK COUNTY CLERK 12/05/2019 09:18 AM
NYSCEF DOC. NO. 1

INDEX NO. 161741/2019
RECEIVED NYSCEF: 12/05/2019

actions which he claims is "undisputed fact" is a classic case of extortion.

19. During the Show, Carlson repeatedly accused MCDOUGAL of committing the crime of extortion against Trump.

20. Extortion is a felony under both state and federal law. Under New York State Penal Law §155.05, "[a] person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will … [e]xpose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule.

21. Under federal law, 18 U.S.C. § 875(d), a person is guilty of extortion when she "with intent to extort from any person …, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another …"

22. Carlson concluded his "reporting" of the "undisputed facts" as to how McDougal extorted Trump by stating that "for whatever reason, Trump caves to it, and he directs Michael Cohen

5

to pay the ransom" later calling the ransom "extortion payments".

23. Carlson asserted several "facts" regarding MCDOUGAL which are demonstrably false. Indeed, every individual involved in the payment that Trump caused to be made to MCDOUGAL never once stated that she extorted Trump or otherwise committed any crime or unlawful act whatsoever.

24. David Pecker ("Pecker"), the Chairman and C.E.O. of America Media, Inc. ("AMI"), admitted to federal prosecutors that he met with Trump and Trump's attorney Michael Cohen ("Cohen") in or about August 2015.

25. At this meeting, Pecker offered to deal with negative stories about Trump's relationship with women by, among other things, assisting Trump in identifying such stories so that they could be purchased and their publication avoided. Pecker agreed to keep Cohen apprised of such negative stories.

26. Pecker and Cohen further admitted to federal prosecutors that in or about June 2016, an attorney who represented MCDOUGAL attempted to sell her story about her extramarital affair with Trump by contacting an editor at the National Enquirer magazine which is owned by AMI. Pecker and the editor then called Cohen to inform him about the story. At

Cohen's urging and subject to Cohen's promise that AMI would be reimbursed, the editor began negotiating for the purchase price of the story. AMI then communicated with Cohen that it would purchase MCDOUGAL's story to prevent its publication.

27. According to Cohen and Pecker's statements to federal prosecutors, on or about August 5, 2016, AMI entered into an agreement with MCDOUGAL to, *inter alia,* acquire her limited life story of her relationship with "any then married man", in exchange for $150,000. Cohen, Pecker, and AMI all conceded that the principle purpose in entering this transaction was to suppress MCDOUGAL's story so as to prevent it from influencing Trump's bid for president. At no time did Cohen, Pecker, AMI or Trump ever accuse MCDOUGAL of extorting anyone.

28. Pecker and Cohen conceded to prosecutors that on or about August 10, 2016, AMI consummated the deal with MCDOUGAL by sending her attorney $150,000. AMI, Pecker and Cohen did this in consultation, concert, and cooperation with, and at the request and suggestion of Trump.

29. Between in or around late August 2016 and September 2016, Cohen called Pecker and stated that he wanted to be assigned MCDOUGAL's limited life rights portion of AMI's agreement with her which included the requirement that she not

7

tell her story about her affair with Trump. Pecker agreed to assign the rights to Cohen for $125,000. Pecker instructed a consultant who works for AMI to complete the assignment through a company unaffiliated with AMI.

30. On September 30, 2016, Pecker signed an assignment agreement which contemplated the transfer of the limited life rights story from AMI to an entity that had been set up by Cohen for $125,000. The consultant delivered the signed agreement to Cohen together with an invoice from a shell corporation incorporated by the consultant for the payment of the $125,000 which falsely stated that the payment was an agreed upon flat fee for advisory services. However, in or about early October 2016, after the assignment agreement was signed but prior to Cohen paying the $125,000, Pecker called Cohen and told him that the deal was off and that Cohen should tear up the assignment agreement.

31. Cohen, AMI, and Pecker all agree and admitted to prosecutors that Trump directed Cohen to have MCDOUGAL paid $150,000 because Trump "was very concerned about how this would affect the election." The payment to MCDOUGAL had nothing to do with extortion.

32. In January 2018, Trump denied directing payment of

8

$150,000 to MCDOUGAL and certainly never accused her of extorting him.

33. In July 2018, a recording by Cohen surfaced in which Trump can be heard voluntarily suggesting a cash payment to MCDOUGAL without any suggestion of extortion or threats.

34. On August 22, 2018, Trump stated that he only found out about the payment that Cohen made to MCDOUGAL "later on" and that it came from him and that it was legal to do so.

35. In December 2018, Trump stated that MCDOUGAL was paid on the advice of Cohen, that he never directed Cohen to break the law, and that if anything illegal happened it was Cohen's fault. Most importantly and no matter which version of Trump's statements one believes, Trump never once claimed that he was extorted by MCDOUGAL.

36. In the end, every individual involved in this transaction never once mentioned, implied, or otherwise indicated that MCDOUGAL extorted Trump. Yet, Carlson publicly asserted that this was "undisputed fact" and said that MCDOUGAL "approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give [her] money."

37. Carlson's statements were reckless and lacked any due diligence because he could not have come to that conclusion if

he or FOX NEWS had conducted even a cursory investigation into the matter including speaking with Trump, Cohen, MCDOUGAL, Pecker, or anyone else at AMI.

38. A reasonable person of ordinary intelligence listening or watching the Show, including its tone and purpose of reporting "undisputed facts" and being the "sworn enemy of the lying", would conclude that MCDOUGAL is a criminal who extorted Trump for money. Indeed, that is exactly what Carlson said – "Remember the facts of the story, these are undisputed"; "[McDougal] approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give [her] money"; "Now that sounds like a classic case of extortion"; "[P]ay the ransom"; and "[T]hose extortion payments …"

39. The Show made a number of specific assertions of "facts" against MCDOUGAL which are verifiably false.

40. FOX NEWS could have easily verified that MCDOUGAL did not approach Trump and threatened to ruin his career and humiliate his family if he did not give her money.

41. Carlson apparently failed to speak with Trump, Pecker, Cohen, AMI, or MCDOUGAL as to why or under what circumstances Trump caused MCDOUGAL to be paid $150,000 prior to making the aforementioned statements on the Show.

10

42. Had Carlson done any investigation or responsible reporting or journalism, he would have easily discovered that what he and FOX NEWS published about MCDOUGAL was and is demonstrably false.

43. Instead, they accused MCDOUGAL of committing a felony under state and federal law to an audience of approximately 2.8 million people without justification or excuse.

44. Carlson, while under the employ of FOX NEWS and during the scope of his employment, fabricated a story about MCDOUGAL.

45. In doing so, Carlson and FOX NEWS were grossly irresponsible and manifested a reckless disregard for truth or falsity by publishing that MCDOUGAL extorted Trump.

46. Carlson failed to research or investigate how or why Trump caused MCDOUGAL to be paid $150,000. Nevertheless, he asserted that his statements were based on "undisputed facts".

47. After listening or watching the Show, a reasonable viewer would have concluded that the statements about MCDOUGAL were fact and that she is a criminal that engaged in illegal activity against the would-be President of the United States.

48. The persistent factual falsity, the actual malice, reckless disregard for the truth and the inherently defamatory

impact of falsely accusing MCDOUGAL of criminality is slander *per se* and mandates redress.

### CAUSE OF ACTION
### (Slander *Per Se*)

49. MCDOUGAL repeats and realleges each and every allegation as if set forth herein.

50. FOX NEWS published the aforementioned false statements about MCDOUGAL made by its employee, Carlson.

51. FOX NEWS published said statements without authorization from MCDOUGAL and without privilege.

52. FOX NEWS' publication was grossly irresponsible, made with reckless disregard for the truth and actual malice.

53. Carlson and FOX NEWS had, or should have had, reasons to seriously doubt the veracity or accuracy of the Show's content about MCDOUGAL.

54. Carlson and FOX NEWS' publication was slander *per se*.

55. FOX NEWS is responsible for its own conduct as well as that of Carlson under the theory of *respondeat superior*.

56. As a result of FOX NEWS' conduct, MCDOUGAL has suffered reputational harm.

12

WHEREFORE, plaintiff demands judgment against the defendant for general and punitive damages in an amount to be determined at trial but no less than the minimum jurisdictional amount for this Court together with such other and further relief as this Court deems just, proper and equitable with the costs, interest, disbursements and the reasonable attorneys' fees.

Dated:   New York, New York
         December 4, 2019

                                    Eric R. Bernstein, P.C.
                                    By: _____
                                    260 Madison Avenue, 18th floor
                                    New York, NY 10016
                                    (212) 683-1530
                                    *Attorneys for Plaintiff*

13

ATTORNEY'S VERIFICATION

ERIC R. BERNSTEIN, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury: I am an attorney at ERIC R. BERNSTEIN, P.C., attorneys of record for Plaintiff(s), in the action within. I have read the annexed

COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files. The reason this verification is made by me and not Plaintiff(s) is that Plaintiff(s) is/are not presently in the county wherein the attorneys for the Plaintiff(s) maintain their offices.

DATED: New York, New York
December 4, 2019

　　　　　　　　　　　　　　　　　　　ERIC R. BERNSTEIN, ESQ.

14

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KAREN MCDOUGAL,

-against-

FOX NEWS NETWORK, LLC,

Defendant.

COMPLAINT

**ERIC R. BERNSTEIN, P.C.**
**260 Madison Avenue, 18th Floor**
**New York, New York 10016**
**(212)683-1530**

To: Fox News Network, LLC
1211 Avenue of the Americas
New York, New York 10036

c/o CT Corporation System
111 Eight Avenue
New York, New York 10011