UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KAREN MCDOUGAL, <br><br> *Plaintiff*, <br><br> v. <br><br> FOX NEWS NETWORK, LLC, <br><br> *Defendant*. | No. 1:19-cv-11161-MKV <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

ERIN E. MURPHY*
K. WINN ALLEN, P.C.*
KATHLEEN A. BROGAN*
ANDREW C. LAWRENCE*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000

EVELYN BLACKLOCK*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 390-4547

SHAWN PATRICK REGAN
HUNTON ANDREWS KURTH LLP
200 Park Avenue
New York, NY 10166
(212) 309-1046
sregan@hunton.com

ELBERT LIN*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW Suite 900
Washington, DC 20037
(202) 955-1548

*\* pro hac vice*

*Counsel for Defendant Fox News Network, LLC*

March 3, 2020

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 1

I.      The Amended Complaint Fails To State A Claim For Slander *Per Se* ................................ 1

         A.      The Amended Complaint Challenges Statements That Cannot Reasonably Be Interpreted as Reporting Facts .......................................................... 1

         B.      The Amended Complaint Fails to Allege Actual Malice ......................................... 6

CONCLUSION ................................................................................................................................. 10

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) .................................................................................................... 6

*Friedman v. Bloomberg L.P.*,
  884 F.3d 83 (2d Cir. 2017) ................................................................................................. 4, 5

*Grande v. Gristede's Food's, Inc.*,
  No. 11-cv-777, 2011 WL 4716339 (S.D.N.Y. Oct. 7, 2011) ...................................................... 5

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
  398 U.S. 6 (1970) ..................................................................................................................... 3

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ...................................................................................................... 6, 9, 10

*Hogan v. Winder*,
  762 F.3d 1096 (10th Cir. 2014) ............................................................................................... 4

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016) ............................................................................................... 10

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) ................................................................................................................ 6

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................................................................ 1, 2

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................................................ 6, 9

*NAACP v. Button*,
  371 U.S. 415 (1963) ................................................................................................................ 6

*Palin v. N. Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ........................................................................................... *passim*

## INTRODUCTION

This defamation suit is baseless and cannot proceed. As Fox News' motion to dismiss explained, the amended complaint suffers from two threshold defects: (1) it challenges statements that cannot reasonably be interpreted as reporting facts, and (2) it fails to allege actual malice. Plaintiff's opposition does not undermine either conclusion. Plaintiff contends that Fox News reported defamatory facts about her only by ignoring the context surrounding Tucker Carlson's spirited opinion commentary. And she argues that she has adequately alleged actual malice only by invoking theories that the Supreme Court has rejected. Because plaintiff does not and cannot assert a plausible defamation claim, this Court should grant the motion to dismiss.

## ARGUMENT

### I.     The Amended Complaint Fails To State A Claim For Slander *Per Se*.

#### A.     The Amended Complaint Challenges Statements That Cannot Reasonably Be Interpreted as Reporting Facts.

To survive Fox News' motion to dismiss, plaintiff must plausibly allege that Carlson made statements that can "reasonably [be] interpreted as stating actual facts" about her that are false and defamatory. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). She has failed to do so. Carlson's description of plaintiff's conduct and his use of the word "extortion" amount to "loose, figurative, or hyperbolic" speech that may not give rise to an actionable defamation claim. *Id.* at 20-21. Furthermore, Carlson made clear that he was merely providing his opinion on an assumed set of facts reported by others, and his opinion concerning those assumed facts is not "provable as false." *Id.* at 19-20. Both reasons necessitate dismissal.

Plaintiff's contrary view is meritless. Plaintiff asserts that a "rationale [*sic*] viewer would believe that what Carlson" said about her "is undisputed fact[]" because Carlson purportedly "beg[a]n his show" with this phrase: "Remember the facts of the story, these are undisputed."

1

Opp.7, 10.  According to plaintiff, because Carlson proceeded to state that she "approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give [her] money"—and because Carlson equated her conduct to a "classic case of extortion" involving "extortion payments"—a reasonable viewer would conclude that plaintiff is an "extortionist" who committed "a felony under both federal and state law."  Opp.4 n.3, 7-8.  That argument, which focuses exclusively on isolated portions of a 35-second snippet of a 41-minute program,[1] simply ignores the critical context that "negate[s] the impression that [Carlson] was seriously maintaining that [plaintiff] committed the crime of [extortion]." *Milkovich*, 497 U.S. at 21.

Instead of "begin[ning] his show" in the manner that plaintiff suggests, Carlson actually started by providing several notable caveats.  In particular, he explained that he was not reporting anything new, but merely recapping the "gist of [a] story" previously published by the *New York Times*, which had asserted that Trump had allegedly directed hush-money payments to two women (whom Carlson did not name).  Vid. 1:35-1:56.  He then stated that the facts underlying that story came from former Trump lawyer Michael Cohen, and he warned that "assuming honesty" with Cohen was not always a "wise idea."  Vid. 2:17-2:25.  And precisely because Carlson believed that Cohen had a penchant for lying, Carlson emphasized that he would assume that Cohen's statements were "true" only "for the sake of argument."  Vid. 2:25-2:30.

Plaintiff never acknowledges this context, but the context is critical.  It reveals that the "undisputed facts" are recounted only loosely and generally, emanate from a source that Carlson deems especially untrustworthy, and are discussed only in the interest of encouraging debate on a

---

[1] Consistent with the amended complaint, plaintiff's opposition does not contend that any statements made outside of the 2:34-3:09 window of the program are defamatory.

talk-show program.² In those circumstances, a reasonable person hearing Carlson's statements would not leap to the conclusion that he had "report[ed]" that plaintiff had "literally" "committed a crime," as plaintiff argues. Opp.2, 8. Indeed, the Supreme Court has explained in a similar situation that a plaintiff may not "extract the word 'blackmail' from the context in which it was used" and hope to make a defamation action out of it. *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 13 (1970). Yet that is precisely what plaintiff attempts to do here.

      Other context confirms that Carlson invoked the term "extortion" only loosely and as a matter of opinion. Plaintiff insists that there is "nothing loose … [or] hyperbolic" about Carlson's assertions that plaintiff's conduct "sounds like a classic case of extortion" or that Cohen made "extortion payments" to her. Opp.8-9; Am. Compl. ¶10. She also posits that Carlson never suggested that "his viewership" was "about to hear his opinion," but rather only "facts." Opp.7. Even setting aside that the phrase "sounds like a classic case of extortion" is loose, and a clear assertion of opinion,³ plaintiff ignores that, in between the two phrases she mentions, Carlson described plaintiff's conduct as equivalent to demanding a "ransom" and branded Trump "a felon" to boot. *See* Am. Compl. ¶10; Mot.15 n.8. Were it reasonable to conclude that Carlson "literally told his viewers that it was undisputed fact that plaintiff extorted Trump" in a criminal sense, Opp.8, it would be equally reasonable to conclude that Carlson literally told his viewers that it was undisputed fact that plaintiff had demanded a ransom and that Trump had committed a felony. That plaintiff herself concedes the unreasonableness of those claims fatally undermines her claim.

---

    ² Plaintiff repeatedly suggests that the loose set of facts that Carlson assumed to be true qualifies as opinion. *See* Opp.7-10. She is mistaken. Carlson's opinion is that the conduct described in that loose set of assumed facts sounds like "extortion" or "ransom." *See* Mot.15-16.

    ³ Perhaps recognizing as much, plaintiff omits the qualifier "sounds like" when recounting Carlson's statements. *See* Opp.4, 8.

Moreover, plaintiff ignores that Carlson went on to ask a guest on the segment his opinion on whether the facts reported by the *Times* sounded like extortion. *See* Mot.5-6. That alone suffices to negate any claim that a reasonable viewer would understand Carlson's opinion to be fact.

The problems do not end there. Although plaintiff doubles down on the claim that Carlson engaged in "sober factual reporting," Opp.2, she overlooks the many examples outside of the segment that she challenges where Carlson did no such thing—*e.g.*, that "Google" had grown "more powerful than the U.S. government" and had "subvert[ed] our democracy entirely." Vid. 22:16-22:23. Plaintiff downplays Carlson's consistent use of hyperbole as "irrelevant," Opp.4 n.1, but even she concedes that "the full context and surrounding circumstances" are relevant, Opp.9.

None of that means, as plaintiff intimates, that "calling someone an extortionist" is *always* "hyperbolic expression" protected by the First Amendment "as a matter of law." Opp.10. It simply means that, because "accusations of extortion are a familiar rhetorical device," *Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014), courts must carefully scrutinize complaints challenging such statements for consistency with the First Amendment, and should not hesitate to dismiss complaints when the statements they challenge are plainly loose, hyperbolic, and/or pure opinion. *See* Mot.10-12 (collecting cases). To be sure, there are cases where accusations of extortion survive a motion to dismiss, and plaintiff discusses two of them.[4] Both cases, however, only confirm that plaintiff's own claim fails as a matter of law.

In *Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2017), Bloomberg News published an article concerning a dispute between an employer and a former employee. The article included

---

[4] Both cases implicate New York law. Plaintiff—a resident of Arizona, Am. Compl. ¶1—does not explain why New York law governs here. As Fox News has contended, however, this Court need not conduct a choice-of-law analysis to resolve this case because the amended complaint fails under bedrock First Amendment principles. *See* Mot.8 n.5.

4

a quote from the employer stating that the former employee had "repeatedly tried to extort money from the company" and had been "dismissed for gross misconduct." *Id.* at 94, 97. The Second Circuit concluded that this statement could reasonably be understood to mean that the employee "actually committed the criminal act of extortion." *Id.* at 97. But that was because it could be "read to imply the existence of undisclosed facts," as the article did not "provide any details that would shed light on [the] use of the word 'extort.'" *Id.* at 97-98. Here, by contrast, Carlson provided exactly the details necessary to understand the basis for the opinion he was offering, and he explained that those details came from other publicly available sources, not from any personal knowledge "unknown to his audience." Opp.9 n.5. For good measure, he also made clear that he was "assum[ing]" those facts only "for the sake of argument" given his distrust of their source. Vid. 2:22-2:55. That critical context readily distinguishes *Friedman*.

*Grande v. Gristede's Food's, Inc.*, No. 11-cv-777, 2011 WL 4716339 (S.D.N.Y. Oct. 7, 2011), does not aid plaintiff either. There, a CEO told a newspaper that a former employee "tried to extort $2 million from the company." *Id.* at *1-*2. The newspaper proceeded to publish that quote and "did not provide any details about the alleged extortion." *Id.* at *3. The court held that the "article could be interpreted as alleging a criminal offense," stressing the "specific … dollar amount that [the former employee] allegedly tried to extort." *Id.* at *3-*4. The differences between that case and this one leap off the page. This is not a scenario in which Carlson went on the air to break news that plaintiff extorted Trump for a sum certain, and immediately went off the air without offering any context. Carlson loosely recounted a set of previously disclosed facts that he assumed true for the sake of argument and stated that those assumed facts sounded like extortion or perhaps ransom—all in a program teeming with loose and hyperbolic speech and opinion. The Supreme Court has explained that "First Amendment freedoms need breathing space to survive."

*NAACP v. Button*, 371 U.S. 415, 433 (1963).  Preserving that freedom demands dismissal of the amended complaint.

### B.     The Amended Complaint Fails to Allege Actual Malice.

The amended complaint must also be dismissed because it fails to allege actual malice, "a term of art denoting deliberate or reckless falsification." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 499 (1991).  Plaintiff does not dispute that she is a public figure who must plead facts showing that Carlson made his allegedly defamatory statements with "knowledge" that they were false or with "reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).  Yet her allegations of actual malice fall far short of what is required.  Her first allegation—that Carlson failed to adequately investigate—is squarely foreclosed by Supreme Court precedent distinguishing mere negligence from reckless disregard.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").  Plaintiff's second allegation—that Carlson must have known his statements were false because Fox News had previously reported on the payments without mentioning extortion— is likewise foreclosed by Supreme Court precedent distinguishing actual from imputed knowledge.  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("state of mind required for actual malice" must be "brought home" to those actually responsible for a later piece contradicting an earlier one).  Finally, plaintiff's third allegation—that Carlson was motivated to fabricate a story about extortion because he was biased in favor of the President—rests on flimsy assertions that do not permit an inference of actual malice.  *Harte-Hanks Commc'ns*, 491 U.S. at 665 (mere motive "cannot provide a sufficient basis for finding actual malice").

Lacking sufficient allegations of actual malice, plaintiff devotes the bulk of her opposition to discussing *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019), a recent Second Circuit

decision that she claims is on all fours with this case.[5] It is not. True, the complaint in *Palin* relied for its theory of actual malice on allegations of prior contradictory reporting and bias. But the resemblance stops there. *Palin* concerned a *New York Times* article that asserted a link between the 2011 shooting of Democratic Congresswoman Gabrielle Giffords and an election advertisement circulated shortly before by the political action committee of former Republican Governor of Alaska Sarah Palin. *Id.* at 808. The ad highlighted certain vulnerable Democratic congressional districts (including Giffords') by placing a symbol of a crosshairs over them. *Id.* The ad was criticized, and some speculated that it had inspired the shooting, but no evidence of such a link emerged. *Id.* Several years later, after another political shooting, the *New York Times* ran a piece on gun violence that claimed that the Palin election ad had helped incite the Giffords shooting. *Id.* The *Times* issued a correction the next day, and Palin sued the *Times* for defamation. The Second Circuit ultimately allowed the claim to go forward on the strength of the complaint's allegations of actual malice stemming from knowledge of prior contradictory reporting and personal bias. Those strong and specific allegations were a world apart from the weak, vague, and speculative allegations here.

As an initial matter, prior contradictory reporting was relevant in *Palin* because the *Times* article at issue made a statement of provable fact: the existence of a link, in the form of incitement to political violence, between the Palin ad and the Giffords shooting. Here, by contrast, the amended complaint's allegation about previous Fox News reporting is irrelevant because plaintiff challenges only statements of opinion—and hyperbolic opinion commentary at that—offered about a set of assumed facts. Moreover, the complaint in *Palin* identified previous reporting that

---

[5] Plaintiff inexplicably states that Fox News "neither cited to nor referenced" *Palin*. Opp.2. In fact, Fox News did both. *See* Mot.21-22.

actually *contradicted* the statement in the *Times* article.  *See Palin*, 940 F.3d at 813-14 (summarizing previous reporting, including an article condemning the "blame hurling" at Palin and explaining that the shooter was "clinically insane" and that "this was not really about politics at all").  That too is missing here.  The amended complaint vaguely refers to previous Fox News reporting that did not mention extortion, but it does not allege that this unidentified earlier reporting *contradicted* Carlson's commentary.

Even setting aside that fatal flaw, the amended complaint still alleges no facts that would permit the inference that Carlson actually knew about, but ignored, prior contradictory Fox News reporting.  The complaint in *Palin* asserted a host of facts sufficient to show that James Bennet, the author of the *Times* piece, actually knew about earlier reports contradicting the claim of a link between the ad and the shooting:  (1) Bennet had been editor-in-chief of *The Atlantic* for 10 years, during which time he "was responsible for the content of, reviewed, edited and approved the publication of numerous articles confirming there was no link" between the Palin ad and the shooting; (2) more generally, as editor-in-chief of *The Atlantic*, Bennet was in a position to "know the journalistic consensus" that the link was lacking; (3) the initial draft of the *Times* article included a hyperlink to another article denying the existence of a connection between the ad and the shooting; and (4) the final version of the *Times* article, after Bennet rewrote it, continued to include that hyperlink.  *Palin*, 940 F.3d at 813-15.  Altogether, those facts permitted a plausible inference that Bennet knew the claim in the *Times* piece was false.  *Id.* at 816.

The amended complaint here asserts nothing remotely comparable.  It simply vaguely alleges that "Fox News"—that is, someone, on some unspecified Fox News program—had previously reported on the payment to plaintiff without mentioning extortion, and then rests on that allegation as though it spoke for itself about Carlson's own knowledge.  *See* Am. Compl. ¶¶36,

8

41, 47. Yet under well-established precedent, plaintiff cannot simply impute knowledge of an earlier Fox News report to Carlson; she must "bring home" the state of mind required for actual malice to *Carlson himself*. *See N.Y. Times*, 376 U.S. at 287. That, she has not done. Nowhere does the amended complaint even hint at facts suggesting that Carlson exercised editorial control over the unidentified earlier Fox News reporting, reviewed material that referenced it, or was otherwise in a position to know about that particular bit of reporting on one of Fox News' numerous programs. The amended complaint's vague and conclusory assertion of Carlson's actual knowledge is thus nothing like the specific and detailed allegations in *Palin*.

The allegations of actual malice in *Palin* were strengthened by the assertion of facts plausibly showing Bennet's personal hostility toward "Palin, her political party, and her pro-gun stance." *Palin*, 940 F.3d at 814. In particular, the complaint alleged that (1) Bennet's brother, a Democratic Senator, was endorsed for election by two House members whose districts had been targeted by the Palin ad; (2) two days before the Giffords shooting, a man threatened to shoot Senator Bennet's offices; (3) after that incident, the Bennet brothers became outspoken about gun control; and (4) during a later election, Palin endorsed Senator Bennet's opponent, while Giffords endorsed Senator Bennet. *Id.* Importantly, the Second Circuit emphasized—consistent with Supreme Court precedent, *see Harte-Hanks Commc'ns*, 491 U.S. at 664-65—that "political opposition alone does not constitute actual malice," and thus a showing of "sheer political bias" by Bennet would not have been sufficient to allow Palin's claim to proceed. *Palin*, 940 F.3d at 814. Rather, those allegations complemented the complaint's other allegations of actual malice by showing that Bennet "had a personal connection to a potential shooting that animated his hostility to pro-gun positions," which in turn undermined the possibility that he was unfamiliar with earlier reports denying a connection between the ad and the Giffords shooting. *Id.*

Again, the amended complaint here asserts no comparable facts. It attempts to make out a "personal relationship" between Carlson and Trump—and corresponding animosity toward plaintiff—analogous to that between the Bennet brothers based on the allegation that Trump "tweeted positively" about Carlson "47 times" over some unspecified period. Am. Compl. ¶51. Positive tweets by one public figure about another are a thin reed upon which to rest allegations of a close personal bond, let alone one comparable to that between brothers. But even assuming *arguendo* such a bond between Carlson and Trump, the amended complaint fails to allege any facts connecting that relationship to the relevant legal issue: whether Carlson knew about, but ignored— or recklessly disregarded—evidence that contradicted his commentary characterizing the payment to plaintiff as extortionary. In contrast to the complaint in *Palin*, which inferred Bennet's knowledge of contradictory evidence from his and his brother's involvement in concrete events closely related to the Palin ad controversy, the amended complaint here asserts no facts showing that Carlson had reason to be particularly familiar with events surrounding the payment to plaintiff. Instead, it merely speculates that Carlson was generally "biased in favor of Trump" and "lied about the payment" to plaintiff to "protect Trump at a politically vulnerable time." *Id.* ¶48. Those are nothing more than assertions of "sheer political bias" of the sort that *Palin* itself recognized are not sufficient under Supreme Court precedent. *Palin*, 940 F.3d at 814 & n.33 (citing *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016) ("[A] newspaper's motive in publishing a story … cannot provide a sufficient basis for finding actual malice." (quoting *Harte-Hancks Commc'ns*, 491 U.S. at 665).)). They come nowhere close to permitting a plausible inference that Carlson acted with actual malice.

## CONCLUSION

For the reasons set forth above, this Court should grant the motion to dismiss.

Respectfully submitted,

s/Shawn Patrick Regan

| | |
|---|---|
| ERIN E. MURPHY*<br>K. WINN ALLEN, P.C.*<br>KATHLEEN A. BROGAN*<br>ANDREW C. LAWRENCE*<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>(202) 389-5000<br><br>EVELYN BLACKLOCK*<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 390-4547<br><br>*pro hac vice* | SHAWN PATRICK REGAN<br>HUNTON ANDREWS KURTH LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 309-1046<br>sregan@hunton.com<br><br>ELBERT LIN*<br>HUNTON ANDREWS KURTH LLP<br>2200 Pennsylvania Avenue, NW Suite 900<br>Washington, DC 20037<br>(202) 955-1548 |

*Counsel for Defendant Fox News Network, LLC*

March 3, 2020

11

## CERTIFICATE OF SERVICE

The foregoing Reply in Support of Defendant's Motion to Dismiss was served electronically on all counsel of record in this matter via the Court's ECF system.

s/Shawn Patrick Regan
Shawn Patrick Regan
