UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:_ 9/24/2020 ____          │
└─────────────────────────────────────┘
```

KAREN MCDOUGAL,

                          Plaintiff,

          -against-

FOX NEWS NETWORK, LLC

                          Defendant.

1:19-cv-11161 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Karen McDougal filed this action asserting a single claim of slander *per se* after she allegedly was defamed by a segment on the popular program "Tucker Carlson Tonight," which is produced by Defendant Fox News Network, LLC ("Fox News") and airs on Fox News Channel.  Specifically, Ms. McDougal alleges that the host of the show, Tucker Carlson, accused her of extorting now-President Donald J. Trump out of approximately $150,000 in exchange for her silence about an alleged affair between Ms. McDougal and President Trump.  After the case was removed from New York state court, Fox News moved to dismiss Ms. McDougal's claim on the grounds that Mr. Carlson's statements were not statements of fact and that she failed adequately to allege actual malice.  For the reasons stated herein, Fox News's Motion to Dismiss is GRANTED.

## BACKGROUND

The facts as stated herein are taken from Plaintiff's Amended Complaint, ECF #27 ("Am. Compl."), unless otherwise noted, and are assumed to be true for the purposes of this motion.[1]

Plaintiff Karen McDougal is a former model and actress who originally rose to public attention as a model in Playboy Magazine.  Tr. at 19:23-25.[2]  Ms. McDougal then became the subject of front-page stories following the 2016 United States Presidential Election based on allegations that she had engaged in a year-long affair (from 2006-2007) with now-President Trump.

The allegations of an affair arose during the 2018 investigation and guilty plea of Mr. Trump's lawyer and aide Michael Cohen on charges that he violated federal campaign finance laws.  *See* Am. Compl. ¶ 22-29.  Specifically, law enforcement investigators and the media revealed that in the months leading up to the 2016 election, American Media, Inc. ("AMI")—the company behind *National Enquirer* and whose CEO, David Pecker, allegedly is close with the President—had paid Ms. McDougal $150,000 in exchange for the rights to her story about the affair with Mr. Trump.  Am. Compl. ¶ 26.  AMI then assigned the rights to the story to a corporate shell entity formed by Mr. Cohen allegedly at Mr. Trump's direction, and in exchange for the assignment Mr. Cohen paid AMI $125,000.[3]  Am. Compl. ¶ 28.

---

[1] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true the facts alleged in the Complaint, drawing all reasonable inference in favor of the plaintiff." *Koch v. Christie's Int'l. PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2009))).

[2] Citations to "Tr. at __" refer to the Transcript of the June 17, 2020 Oral Argument on Defendant's Motion to Dismiss [ECF #36].

[3] It is not clear whether the discrepancy between the amount of the payment to Ms. McDougal and the amount paid to AMI was purposeful.

During the Government's investigation of these payments, Mr. Cohen and Mr. Pecker both revealed that Mr. Trump had directed the AMI payment to Ms. McDougal in the first place, and then personally reimbursed the payments himself, all as part of an effort to avoid having the allegations affect the 2016 election.  Am. Compl. ¶¶ 26-29.  Mr. Trump initially had denied knowledge of any payments to McDougal, *see* Am. Compl. ¶ 30, but by December 2018, had admitted to the payments, arguing that they were made on the advice of Mr. Cohen and that any illegality was Cohen's fault.  Am. Compl. ¶ 33.  Mr. Cohen ultimately was charged with and pleaded guilty to violations of campaign finance laws.[4]

Shortly before Mr. Cohen's sentencing, on December 10, 2018, Fox News aired an episode of "Tucker Carlson Tonight," a talk show hosted by Tucker Carlson.  Am. Compl. ¶¶ 5-7.  The first segment of the December 10 episode was devoted to the "Flawed 'Russia' Probe" and contained a discussion of Mr. Cohen's payments to Ms. McDougal.  Am. Compl. ¶¶ 7-13.  While Mr. Carlson did not refer to Ms. McDougal by name during the show, at one point during a debate with guest commentators, Fox News displayed her picture on-screen.  Fox News has not contested that Mr. Carlson was referring to Ms. McDougal during the segment, including at oral argument on the present motion when the issue specifically was addressed.  *See* Tr. at 19:17-20:9.

The discussion regarding the payments from Mr. Cohen to Ms. McDougal lasts for several minutes and included debate with two guests on the show.[5]  During the part of the segment most relevant to Plaintiff's claims here, Mr. Carlson stated:

---

[4] The Court may take judicial notice of Mr. Cohen's guilty plea and sentencing in connection with this activity.  *See* ECF #2, 7, 29, *United States v. Michael Cohen*, Case Number 18-cr-00602-WHP (S.D.N.Y) (judgment entered December 12, 2018); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a related criminal prosecution).

[5] Fox News provided the Court with a recording and transcript of the entire episode of "Tucker Carlson Tonight" that aired on December 10, 2018.  *See Do the Mueller filings prove Trump committed a crime?*, Fox News (Dec. 10, 2018), https://fxn.ws/36BY7Rb [https://perma.cc/2U5H-RH4C/] ("Episode Transcript").  During oral argument on

The relevant details were spelled out in a piece that ran over the weekend in The New York Times under this headline.  "Prosecutors say Trump directed illegal payments during campaign."  The gist of the story is this. Trump's former lawyer, Michael Cohen, has told federal prosecutors that he facilitated payments to two women who said they had affairs with Donald Trump.  And then, well actually that's it.  That's the entire story right there.

Paying these two women, say federal prosecutors and their flacks at NBC News, was a serious crime, a crime worthy of impeachment, if not, indictment. OK. But you might be wondering, how exactly is that criminal?  Well, we're going to explain it to you.

We're going to start by stipulating that everything Michael Cohen has told the feds is absolutely true.  Now, assuming honesty isn't usually a wise idea with Michael Cohen, but for the sake of argument, let's do it in this case, everything he says is true, why is what Cohen is alleging a criminal offense?

*Remember the facts of the story.  These are undisputed.  Two women approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give them money.  Now, that sounds like a classic case of extortion.*

*Yet, for whatever reason, Trump caves to it, and he directs Michael Cohen to pay the ransom.  Now, more than two years later, Trump is a felon for doing this. It doesn't seem to make any sense.*

*Oh, but you're not a federal prosecutor on a political mission.  If you were a federal prosecutor on a political mission, you would construe those extortion payments as campaign contributions.*  You'd do this even though the money in question did not come from or go to Donald Trump's presidential campaign.

Then you'd claim that Trump and Michael Cohen violated campaign finance law because they didn't publicly disclose those payments despite the fact that disclosing them would nullify the reason for making them in the first place, which was to keep the whole thing secret.

That is the argument you would make, both in federal court and through your proxies on cable television.  It is insultingly stupid.  But because everyone in power hates the target of your investigation, nobody would question you, and that's what's happening right now.

*See* Episode Transcript (emphasis added to portions quoted in the Complaint); *see also* Am.

Compl. ¶ 10.  Plaintiff claims that at least two statements in this segment are defamatory: (1) Mr.

Carlson's accusation that Ms. McDougal "approached Donald Trump and threatened to ruin his

---

Defendant's motion, counsel for both Parties consented to the Court viewing the video and reviewing the content of the entire episode.  *See* Tr. at 19:9-11.  Even if counsel had not consented, and regardless of what law applies to Plaintiff's defamation claims, *see infra* at 6-7, the Court is required to examine the purported defamatory statements in context.  *See Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 242-43, 567 N.E.2d 1270, 1274-75 (N.Y. 1991); *Yetman v. English*, 811 P.2d 323, 328 (Ariz. 1991).  The Second Circuit has stated that matters that are "integral" to the Complaint, as the transcript and recording are here, may properly be considered on a motion to dismiss.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).

career and humiliate his family if he doesn't give them money" and (2) Mr. Carlson's suggestion that Ms. McDougal actions were "a classic case of extortion," which is a crime.  Am. Compl. ¶¶ 13-20.  Plaintiff submits that Mr. Carlson's statements were facts, as indicated by his statement: "Remember the facts of the story.  These are undisputed."  *See* Episode Transcript; Am. Compl. ¶¶ 10, 12, 16, 34.

Ms. McDougal filed her original complaint in this action on December 5, 2019, almost a year after the episode aired.  Before it was served with the original complaint, Fox News removed the case to federal court on the basis of diversity jurisdiction.  *See* Notice of Removal, ECF #1; *see also* Amended Notice of Removal, ECF #12 (amending Notice of Removal to comply with Local Rules and to clarify the relevant time to assess the Parties' citizenship).  Defendant thereafter filed a motion to dismiss the original complaint and, in response, Plaintiff filed the Amended Complaint, ECF #27.

Fox News again moved to dismiss.  The motion argues that when read in context, Mr. Carlson's statements "cannot reasonably be interpreted as facts" and that the Amended Complaint fails to allege actual malice.  *See* Memorandum in Support of Motion to Dismiss, ECF #29 ("Def. Br.") at 1-2.  In opposition, Ms. McDougal suggests that any accusation of a crime is defamatory *per se* and that Mr. Carlson himself admitted that the statements were factual.  *See* Memorandum in Opposition to Motion to Dismiss, ECF #30 ("Pl. Br.") at 7-11.  Additionally, Ms. McDougal alleges that under recent Second Circuit precedent, she has adequately alleged actual malice.  *See* Pl. Br. at 15-16.  In reply, Fox News attempts to distinguish that precedent and calls the Court's attention to authority holding that accusations of "extortion" and similar statements are not statements of fact.  *See* Reply Memorandum in Further Support of Motion to Dismiss, ECF #31.  The Court held oral argument on the Motion to

Dismiss on June 17, 2020. *See* Transcript of the June 17, 2020 Oral Argument on Defendant's Motion to Dismiss [ECF #36].

For the reasons that follow, the Court grants Defendant's Motion to Dismiss this case.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The elements required to allege defamation, and, indeed, the scope of the Court's review of the statements at issue, are governed by applicable state law. In a tort case in which the Court's diversity jurisdiction is invoked, as here, the Court determines what state's law to apply by looking to the choice of law principles of the forum state, here New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Court will not conduct a full choice of law analysis here, however, because (as the Parties agree for the purposes of this motion) the two potential sources of law—New York and Arizona—are identical on all relevant points and because Defendant's constitutional defenses may apply regardless of which state's law governs. *See* Tr. at 6:1-7:4, 18:16-19:11; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 265, 279-80 (1964) (applying constitutional "actual malice" defense to a state law defamation claim).

For example, to allege defamation, New York requires (1) a false statement about the plaintiff, (2) published to a third party without authorization or privilege, (3) through fault

amounting to at least negligence on part of the publisher, (4) that either constitutes defamation *per se* or caused "special damages." *See Foster v. Churchill*, 87 N.Y.2d 744, 751, 665 N.E.2d 153, 158 (1996); *Dillon v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999); *see also Friedman v. Bloomberg, L.P.*, 884 F.3d 83, 95 (2d Cir. 2017).   Similarly, under Arizona law, a Defendant is liable when he (1) publishes, (2) a statement that is false or defamatory (defined as something that brings the target disrepute or ridicule), (3) concerning the Plaintiff that (4) the speaker knows, or is reckless or negligent in not knowing, is false.  *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 637 P.2d 733, 738 (Ariz. 1981).  Under the laws of both states, a plaintiff may allege "defamation *per se*" (and, therefore, will not be required to plead special damages) where, among other things, the plaintiff is accused of serious criminal conduct.  *See Geraci v. Probst*, 15 N.Y.3d 336, 344 938 N.E.2d 917, 922 (2010); *Modla v. Parker*, 495 P.2d 494, 496 n.1 (Ariz. Ct. App. 1972).  Arizona and New York law also both provide that courts considering defamation claims review the context of the whole publication when analyzing potentially defamatory speech.  *See Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 244-45, 567 N.E.2d 1270, 1274-75 (N.Y. 1991); *Yetman v. English*, 81 P.2d 323, 328 (Ariz. 1991).  Because the elements of defamation claims are substantially identical and because review of the whole context of any statements is required under the laws of both states, the Court need not proceed further with a choice of law analysis.

In any defamation case, the question of whether the statements at issue are statements of fact is a legal one, informed by factual context of the statements in question.  *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985) ("It is also clear that the determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court.").  *But see Nat'l Rev., Inc. v. Mann*, __U.S. __, 140 S. Ct. 344, 345-46 (Alito, J., dissenting from the denial of certiorari) (examining a split among state and

federal courts on the issue). Actual malice, on the other hand, must be plausibly alleged by providing facts to demonstrate a defendant's disregard for the truthfulness of its statements. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 815-16 (2d Cir. 2019).

## DISCUSSION

Fox News seeks dismissal at the pleading stage on two constitutional grounds. First, it asserts that Mr. Carlson's statements on the December 10, 2018, episode of his show are constitutionally protected opinion commentary on matters of public importance and are not reasonably understood as being factual. Second, Fox News argues that Ms. McDougal has failed to allege actual malice. For the purposes of this Motion, no other issues are in play.

Specifically, Fox News has not contested that Mr. Carlson's statements were about Plaintiff. Ms. McDougal asserts, and Fox News does not dispute, that she is one of the "two women" to whom Carlson was referring in his remarks, despite never mentioning her name.[6] *See* Am. Compl. ¶ 13. Fox News also does not challenge Plaintiff's defamation *per se* theory. On the other hand, Ms. McDougal does not dispute that she is a public figure subject to the actual malice standard. *See* Tr. at 18:2-9.

## I.    *Carlson's Statements Are Not Actionable as Defamation*

Fox News first argues that, viewed in context, Mr. Carlson cannot be understood to have been stating facts, but instead that he was delivering an opinion using hyperbole for effect. *See* Def. Br. at 12-15. Fox News cites to a litany of cases which hold that accusing a person of "extortion" or "blackmail" simply is "rhetorical hyperbole," incapable of being defamatory. *See*

---

[6] It is not significant legally that Ms. McDougal's name was not stated during the episode, as long as she could be identified some other way. *See, e.g.*, *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104-05 (2d Cir. 2017) ("'It is not necessary that the world should understand the libel; it is sufficient if those who know the plaintiff can make out that she is the person meant.' . . . Plaintiffs need only plead sufficient facts to make it plausible—not probable or even reasonably likely—that a reader familiar with each Plaintiff would identify him as the subject of the statements at issue." (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980))).

Def. Br. at 10-11.  On the other hand, Plaintiff asserts that the accusation of "extortion," coupled with the description of Plaintiff's alleged actions, constitute provably false factual assertions that Ms. McDougal committed a crime, and that those accusations may give rise to a defamation claim.  *See* Pl. Br. at 7-10.

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990), the United States Supreme Court emphasized that statements, whether presented as fact or opinion, may be defamatory only where they state or imply a provably false assertion of fact.  It has long been the law that simply invoking a criminal act or accusing a person of a crime does not transform an otherwise nonfactual statement into a factual assertion if the accusation, in light of the surrounding context, is "rhetorical hyperbole" or where the record is "devoid of evidence" that anyone thought a crime was actually committed.  *See Greenbelt Coop. Pub. Ass'n v. Bressler*, 398 U.S. 6, 14 (1970).  In particular, accusations of "extortion," "blackmail," and related crimes, such as the statements Mr. Carlson made here, are often construed as merely rhetorical hyperbole when they are not accompanied by additional specifics of the actions purportedly constituting the crime. *See, e.g.*, *id.* ("It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant . . . . [E]ven the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable."); *Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014) ("[A]ccusations of extortion are a familiar rhetorical device.  We all know of colloquial or hyperbolic uses of the term.  Although the term has a derogatory meaning when used either way, we cannot assume that the term always refers to a crime or similarly heinous conduct.  Like with other words, context matters."); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 313 (S.D.N.Y. 2017) ("It is hyperbole, just like her exaggerated statement that she was suffering

from 'varying degrees of what many people might view as extortion, manipulation, fraud, and deceit.' And hyperbole is 'simply not actionable' for defamation." (quoting *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993))).

Such accusations of crimes also are unlikely to be defamatory when, as here, they are made in connection with debates on a matter of public or political importance. *See Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) (holding that an accusation that the plaintiff was an "accomplice to murder" was not actionable because it was made during an "emotional debate concerning emotionally-charged issues of significant public concern," specifically regarding abortion). Such statements are just one type of the "'rhetorical hyperbole' normally associated with politics and public discourse in the United States." *Clifford v. Trump*, 339 F. Supp. 3d 915, 925 (C.D. Cal. 2018). This is especially true in the context of commentary talk shows like the one at issue here, which often use "increasingly barbed" language to address issues in the news. *See* Rodney A. Smolla, 1 Law of Defamation § 6:92 (2d ed.).

The context in which the offending statements were made here make it abundantly clear that Mr. Carlson was not accusing Ms. McDougal of actually committing a crime. As a result, his statements are not actionable. While Mr. Carlson used the word "extortion," Defendant submits that the use of that word or an accusation of extortion, absent more, is simply "loose, figurative, or hyperbolic language" that does not give rise to a defamation claim. Def. Br. at 9. The Court agrees. *See Milkovich*, 497 U.S. at 20-21. Mr. Carlson's statements were in response to contemporaneous suggestions that President Trump could be impeached due to campaign finance violations stemming from the payments to Ms. McDougal, an issue that attracted significant public and political concern and led to sustained debate across media platforms. *See* Am. Compl. ¶¶ 49-50. Mr. Carlson tied the potential of an impeachment inquiry into his discussion of the payments to Ms. McDougal. *See* Episode Transcript. When the statements are

read in context, it is apparent that Mr. Carlson is remarking on hypocrisy he perceives, *i.e.* that Mr. Cohen could be prosecuted, and the President impeached, for actions falling short of the conduct Ms. McDougal purportedly engaged in during the President's campaign.  In light of that, Mr. Carlson's statements are "a statement on matters of public concern" that deserve the highest protection.  *Milkovich*, 497 U.S. at 19; *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 151 (2d Cir. 2000).

A series of decisions from courts around the country hold that similar accusations of extortion or blackmail, especially as related to political issues, are almost always construed as nonactionable.  *See, e.g.*, *Greenbelt Pub. Ass'n*, 398 U.S. 6, 13-14 (1970) (blackmail accusation was not actionable because it referred to real estate zoning and sale negotiations between a city and a developer); *Hogan*, 762 F.3d at 1108 (accusation of extortion in connection with settlement negotiation between former employee and state agency); *Remick v. Manfredy*, 238 F.3d 248, 262 (3d Cir. 2001) (plaintiff accused of extortion in connection with pre-suit settlement talks with his former lawyer); *Brodkorb v. Minnesota*, No. 12-cv-1958 (SRN) (AJB), 2013 WL 588231, at *11-12 (D. Minn. Feb. 13, 2013) (plaintiff accused of extortion in the context of pre-filing settlement of a discrimination claim against state legislature); *Automated Transactions, LLC v. Am. Bankers Ass'n*, 216 A.3d 71, 87 (N.H. 2019) (plaintiff accused of extortionate demands for licensing fees in connection with negotiation over licensing patented technology).

In light of this precedent and the context of "Tucker Carlson Tonight," the Court finds that Mr. Carlson's invocation of "extortion" against Ms. McDougal is nonactionable hyperbole, intended to frame the debate in the guest commentator segment that followed Mr. Carlson's soliloquy.  As Defendant notes, Mr. Carlson himself aims to "challenge[] political correctness and media bias."  Def. Br. at 14.  This "general tenor" of the show should then inform a viewer that he is not "stating actual facts" about the topics he discusses and is instead engaging in

"exaggeration" and "non-literal commentary." *Milkovich*, 497 U.S. at 20-21; *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997)). Fox persuasively argues, *see* Def Br. at 13-15, that given Mr. Carlson's reputation, any reasonable viewer "arrive[s] with an appropriate amount of skepticism" about the statements he makes. *600 W. 115th Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141, 603 N.E.2d 930, 936 (1992). Whether the Court frames Mr. Carlson's statements as "exaggeration," "non-literal commentary," or simply bloviating for his audience, the conclusion remains the same—the statements are not actionable.

This interpretation of the segment is bolstered by the disclaimer Mr. Carlson made at the outset of his monologue. *See* Tr. at 8:2-19. Specifically, he introduced the segment by stating: "We're going to start by stipulating that everything Michael Cohen has told the feds is absolutely true. Now, assuming honesty isn't usually a wise idea with Michael Cohen, *but for the sake of argument*, let's do it in this case, everything he says is true[.]" *See* Episode Transcript (emphasis added). Mr. Carlson, who is not a lawyer, *see* Def. Br. at 13 n.7, then goes on to state his opinion: "Now that *sounds like* a classic case of extortion." *See* Episode Transcript (emphasis added). These disclaimers would put any reasonable viewer on notice that Carlson himself "doubt[s] the veracity of the source of these statements" and that the listener should as well. Tr. at 8:17-18. Mr. Carlson's statements, instead, seek to frame the issue for a debate that follows on the show, and do not come as a sober factual report.

Fox News has convincingly argued that Mr. Carlson was motivated to speak about a timely political cause and that, in this context, it is clear that his charge of "extortion" should not be interpreted as an accusation of an actual crime. Plaintiff's interpretation of Mr. Carlson's accusations is strained and, the Court finds, not reasonable when the entire segment is viewed in context. It is true that Mr. Carlson added color to his unsubstantiated rhetorical claim of extortion when he narrated that Ms. McDougal "approached" Mr. Trump and threatened his

career and family.  *See* Am. Compl. ¶ 10.  But this overheated rhetoric is precisely the kind of pitched commentary that one expects when tuning in to talk shows like Tucker Carlson Tonight, with pundits debating the latest political controversies.

Plaintiff's understanding focuses only on specific words Mr. Carlson stated, taken entirely out of context of what preceded them and what followed.  In particular, Ms. McDougal emphasizes that Mr. Carlson reiterated to his viewers "Remember the facts of the story.  These are undisputed," Am. Compl. ¶ 10, before he went on to state, "Two women approached Donald Trump and threatened to ruin his career and humiliate his family if he doesn't give them money . . . [F]or whatever reason, Trump caves to it, and he directs Michael Cohen to pay the ransom.  *Id.*  But, immediately before these statements, Mr. Carlson laid out that he was "stipulating" to these assertions "for the sake of argument."  *See* Episode Transcript.  And, as the segment continued, Mr. Carlson stated his opinion that Ms. McDougal's alleged conduct "sounds like a classic case of extortion."  *Id.*  It is true that Mr. Carlson repeatedly asserted that the conduct was extortion during a debate with a guest commentator in which Mr. Carlson also described the payment from Cohen to McDougal as "paying off someone who is extorting you, threatening to make public details of your personal life, if she doesn't get paid."  *See* Episode Transcript.  But there can be no doubt that Mr. Carlson did so as hyperbole to promote debate on a matter of public concern.

As a result, the Court concludes that Mr. Carlson's statements viewed in context are not factual representations and, therefore, cannot give rise to a claim for defamation.  For this reason, Defendant's Motion to Dismiss on this ground is granted.  But even if Mr. Carlson's statements were actionable, the Amended Complaint still must be dismissed because Plaintiff has not plausibly pleaded actual malice.

II.    *McDougal Has Failed To Plead Actual Malice*

Individuals who have "assumed roles of especial prominence in the affairs of society" and who have "invite[d] attention and comment" are generally considered public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).  Longstanding Supreme Court precedent provides that a public figure, in turn, cannot recover for defamation unless he or she proves that the relevant statements were made with actual malice.  *See New York Times v. Sullivan*, 376 U.S. 254, 280 (1964); *Palin*, 340 F.3d at 817.  The defamatory statements must be "made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173-74 (2d Cir. 2001) (quoting *New York Times v. Sullivan*, 376 U.S. at 280 (1964)).  On a motion to dismiss, "a public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice."  *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).

Actual malice is a high bar.  A plaintiff cannot, for example, allege merely that the speaker was negligent in failing to uncover falsity or that he should have investigated his claims further before speaking.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *New York Times v. Sullivan*, 376 U.S. at 288 ("[T]he evidence against the Times supports at most a finding of negligence in failing to discover the misstatements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice.").  Instead, the plaintiff needs to allege that the speaker possessed a "high degree of awareness of [the statements'] probable falsity."  *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  Moreover, allegation about improper political or personal biases do not establish actual malice without additional facts to suggest the

speaker acted pursuant to that bias.  *See Palin*, 340 F.3d at 814 (requiring more than "sheer political bias" to establish actual malice); *Harte-Hanks Commc'ns*, 491 U.S. at 665 ("[A] newspaper's motive in publishing a story—whether to promote an opponent's candidacy or to increase its circulation—cannot provide a sufficient basis for finding actual malice.").

Plaintiff argues that she sufficiently has pleaded actual malice based on the allegations that Mr. Carlson is personally and politically biased in favor of President Trump, and, thus, would ignore the truth to publish the story supporting him.  *See* Pl. Br. at 11-17; Am. Compl. ¶¶ 47-51.  But Plaintiff's charge is pure speculation, supported not by facts but by only conclusory statements.  Because Plaintiff has not alleged any other sufficient basis for inferring actual malice, Plaintiff, who concedes she is a public figure, *see* Tr. at 12:23-13:6, 18:2-9, has failed to state a claim on which relief can be granted.

Ms. McDougal rests much of her argument regarding actual malice on the Second Circuit's decision in *Palin v. New York Times*, 940 F.3d 804 (2d Cir. 2019).  *See* Pl. Br. at 11-16. In that case, the Second Circuit examined and discussed at length a litany of facts that were sufficient to allege actual malice at the pleading stage.  *Palin*, 340 F.3d at 813-15.  While the facts of *Palin* are somewhat *sui generis*, especially since the facts were only learned by way of a procedurally defective evidentiary hearing on a motion to dismiss, *see id.* at 810-813, they are instructive as to the quantum of evidence required to establish a plausible inference of actual malice.  In *Palin*, the *New York Times* published an unsigned editorial, primarily written by James Bennet, which repeated a long-debunked claim linking former Alaska Governor and candidate for Vice President Sarah Palin to the 2011 shooting of Representative Gabrielle Giffords.  *Id.* at 809.  In support of an inference of actual malice against the *New York Times*, Palin alleged, with respect to specific facts, that Bennet was uniquely situated as both politically biased against her and in possession of direct knowledge of the debunked claims.  As the

previous Editor-in-Chief of *The Atlantic*, Bennet had overseen the publication of several articles acknowledging there was no link between Palin and the Giffords shooting. *Id.* at 814. Meanwhile, Bennet and his brother, United States Senator Michael Bennet of Colorado, had been active advocates for gun control, opposed to Palin's political activities. *Id*. at 815. These facts, the Second Circuit found, "could indicate more than sheer political bias" and supported a plausible inference of actual malice. *Id*. at 814. As an alternate ground, Palin also alleged that the editorial in question included a hyperlink to an article that specifically refuted the defamatory claim and that this link had remained in the article through Bennet's edits and re-writes. *Id.* at 815. This fact also gave rise to a plausible inference of actual malice. *Id.* at 815.

In sum, the Second Circuit found that actual malice adequately was alleged where (1) the speaker of defamatory statements possessed an editorial and political advocacy background sufficient to suggest he published the statements with deliberate or reckless disregard for their truth, (2) the drafting and editorial process of the statements in question permitted an inference of deliberate or reckless falsification, and (3) the newspaper's subsequent correction to the allegedly defamatory article did not undermine the plausibility of that inference. *Id.* at 813.

While Plaintiff attempts to follow this same roadmap here, there are several notable differences that undermine any inference of actual malice in this case. For example, Fox News never issued a correction to the statements Mr. Carlson made on December 10, 2018. Thus, any bad intent that could be inferred in *Palin* from a decision to publish and (one day later) then to issue a correction cannot be analogized to this case. With respect to the other facts Plaintiff highlights in an effort to make out actual malice, Ms. McDougal suggests that (1) Fox News (not Carlson himself) had previously reported on the Cohen criminal prosecution and the payments to Ms. McDougal without referencing extortion, Am. Compl. ¶ 41, (2) Mr. Carlson has a personal relationship with Trump as evidenced by 47 Twitter posts (positive tweets *by Trump* about

16

Carlson), Am. Compl. ¶ 51, and (3) Mr. Carlson had a pre-determined narrative based on his political bias, Am. Compl. ¶¶ 47-50.  *See* Pl. Br. at 15-16.  Ms. McDougal's allegations regarding these theories largely are conclusory or speculative.  Without more specific facts bearing on Mr. Carlson's knowledge or motives to act based on personal bias, she cannot establish a plausible inference of actual malice.

First, Ms. McDougal's theory about prior publications is foreclosed by precedent.  While a speaker may be found to have acted with actual malice if a plaintiff can allege that the speaker specifically reviewed a contrary publication previously, *see Palin*, 940 F.3d at 813-814 (naming specific articles of which the writer of a defamatory article oversaw publication), a speaker is not otherwise required to seek out contrary stories.  *Harte-Hanks Commc'ns*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").  Indeed, in *New York Times v. Sullivan*, the Supreme Court rejected a claim identical to the one Ms. McDougal makes here, that because the *New York Times* had previously reported on an issue while stating the facts differently, the publication had demonstrated actual malice.  *New York Times v. Sullivan*, 376 U.S. at 287-88.  In this case, simply because Fox News had reported on the Cohen case (and the payments to McDougal) without reference to extortion does not mean that Mr. Carlson acted with actual malice when he linked the concepts.  Mr. Carlson did not have any duty to seek out these earlier publications, and it is instead Plaintiff's obligations to "bring home" an existing connection between Mr. Carlson and these earlier publications.  *See New York Times v. Sullivan*, 376 U.S. at 287.

Second, Ms. McDougal's allegations of political and personal bias also fall well short of what is necessary to allege actual malice.  In *Palin*, the Second Circuit endorsed a "bias" theory based on factual assertions and, then, only in conjunction with an allegation that the speaker

otherwise had knowledge of the falsity of his statements. *Palin*, 940 F.3d at 814-15 (finding a plausible allegation of actual malice where the speaker had personal and political biases and he himself had previously reviewed and edited articles contradicting his false statements). Ms. McDougal's arguments rest only on speculative allegations of a personal friendship between Mr. Carlson and President Trump and a purported political agreement/alignment between them. *See* Am. Compl. ¶ 51. As the sole factual basis for the claimed personal relationship, Ms. McDougal points to 47 instances where the President "tweeted positively about Carlson" on the social media site Twitter. Am. Compl. ¶ 51. She also makes the conclusory allegation that Mr. Carlson is driven to help the President politically and that defaming her was part of that effort. Am. Compl. ¶¶ 48-50.

The Court is unaware of any law—and Plaintiff has not provided any—that establishes any number of social media posts by someone else as indicative of a close personal relationship sufficient to establish actual malice. Instead, while the posts might indicate that the President follows or even admires Mr. Carlson, it is pure speculation to assume the reverse, and the tweets alone certainly do not establish any kind of personal relationship. As a result, the Amended Complaint alleges only "sheer political bias" as a basis for inferring actual malice, which is not enough. This is consistent with other post-*Palin* cases that require specific factual allegations about the speaker's bias and the reasons a speaker has to lie. *See, e.g.*, *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952 (8th Cir. 2020) (citing *Palin* in holding that a negligent mistake of identity is not sufficient bad motive to show actual malice); *Oakley v. Dolan*, No. 17-cv-6903, 2020 WL 818920 (S.D.N.Y. Feb. 19, 2020) ("[E]vidence of ill will alone, without more, cannot establish actual malice.").

Because Ms. McDougal has not pointed to specific facts pertaining to Mr. Carlson's alleged biases and otherwise does not provide a permissible theory supporting a finding of actual

malice, the Court cannot find a plausible inference that actual malice exists.  As a result, the

Motion to Dismiss is granted on this ground.

## CONCLUSION

Plaintiff Karen McDougal claims to have been defamed by accusations of "extortion"

leveled at her by Tucker Carlson on Defendant Fox News Network's broadcast.  However, as

described herein, Ms. McDougal has not offered a plausible interpretation that the statements Mr.

Carlson made, when read in context, are statements of fact.  The Court concludes that the

statements are rhetorical hyperbole and opinion commentary intended to frame a political debate,

and, as such, are not actionable as defamation.  In addition, as a public figure, Ms. McDougal

must raise a plausible inference of actual malice to sustain her defamation claim.  She has failed

to do so.  The Amended Complaint offers only conclusory allegations about Mr. Carlson's

alleged biases and otherwise pursues theories that are pre-empted by long-standing precedent.

For these reasons, Defendant Fox News's Motion to Dismiss the Amended Complaint [ECF #28]

is GRANTED.

The Clerk of Court respectfully is requested to close the case.

**SO ORDERED.**

Date:  **September 23, 2020**
     **New York, NY**

                         **MARY KAY VYSKOCIL**
                         **United States District Judge**